UNITED STATES of America,
Plaintiff–Appellee,

v.

Alex V. STEIN, Defendant–Appellant.

No. 93–30336.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1994.

Decided Oct. 13, 1994.

**1408**

Douglas Stringer, Portland, OR, for defendant-appellant.

Charles W. Stuckey, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Before: ALDISERT,* THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Alex V. Stein appeals his convictions and sentence for mail fraud, wire fraud, securities fraud and money laundering. He argues that mailings by a state government agency warning investors of his fraudulent scheme did not constitute a violation by him of the mail fraud statute. He also challenges the jury instructions on the money laundering counts. He further contends his sentence is invalid because the district court applied the guidelines for money laundering rather than the guidelines for fraud, and because his sentence included an enhancement for obstruction of justice. Finally, he argues there is insufficient evidence to support his conviction on Count 8 of the mail fraud counts.

We have jurisdiction under 18 U.S.C. § 1291. We reverse Stein's convictions for money laundering on Counts 35, 36 and 37. We also reverse his conviction on Count 8 of the mail fraud counts. We affirm all other convictions, but vacate Stein's sentence and remand for resentencing.

## DISCUSSION

### A. Mail Fraud

In 1987, examiners from the United States Securities and Exchange Commission and the State of Oregon Securities Section interviewed Stein and began investigating his operations. Stein told Nancy Burke, the lead Oregon securities examiner, that he had moved his clients' investments out of hedged arbitrage transactions and into telecommunications contracts. Unbeknownst to anyone but Stein, the telecommunications contracts, to the extent they existed, were forged.

On the basis of Stein's misrepresentations, Burke drafted a Consent to Cease and Desist Order and Agreement (Consent Order). The Consent Order stated that Stein would repay all named investors their principal no later than June 1, 1988. The Consent Order further stated that the monies owed to the investors were "invested as assets in certain telecommunications contracts" and that these contracts would become due and payable to Stein "on or before May 6, 1988," at which time "the proceeds from the payment to [Stein] of the contracts [would] be used to repay all the investors." In addition, a Cease and Desist Order forbidding Stein from selling securities in the State of Oregon was issued.

Under threat of the state initiating a "formal investigation" of his activities, Stein signed the Consent Order. Then, with Stein's knowledge, Burke mailed copies of both the Consent Order and the Cease and Desist Order to the investors.

The mail fraud charges against Stein were predicated on the mailings of the Consent Order and the Cease and Desist Order. The government contends these mailings violated the mail fraud statute because they were part of Stein's scheme to defraud and "lulled" his investors into a false sense of security.

■ Stein argues that because the mailings of the Consent Order and the Cease and Desist Order occurred long after he received the investors' funds, and served to expose rather than hide his improper securities dealings, they could not possibly have furthered any fraudulent scheme. We disagree.

■ Conviction under the mail fraud statute requires proof of two elements: (1)

* Hon. Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

existence of a scheme to defraud, and (2) "using or causing the use of the mails in furtherance of the scheme." *United States v. Lothian,* 976 F.2d 1257, 1262 (9th Cir.1992) (citation omitted). The statute requires only that the defendant "causes" the mailing, not that he personally mail it. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). A defendant causes a mailing if he "acts with the knowledge that the prohibited actions will follow in the ordinary course of business or where the prohibited acts can reasonably be foreseen."[1] *Lothian,* 976 F.2d at 1262.

"To find a violation of the mail fraud statute, ... the charged 'mailings' must be 'for the purpose of executing the scheme.'" *United States v. Lane,* 474 U.S. 438, 451, 106 S.Ct. 725, 733, 88 L.Ed.2d 814 (1986) (quoting *Kann v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944)). The mailings "need not be an essential element of the scheme." *See Schmuck v. United States,* 489 U.S. 705, 710, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989). It is enough for the mailing to be "'incident to an essential part of the scheme,'" *id.* (quoting *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)), or "a step in [the] plot," *id.* (quoting *Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916)).

Here, the mailings deterred detection of Stein's scheme. They "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of [Stein] less likely than if no mailings had taken place." *United States v. Maze,* 414 U.S. 395, 403, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1974). Such "lulling letters" are ones which "reassure[ ] the victim that all is well, discouraging him from investigating and uncovering the fraud." *United States v. Jones,* 712 F.2d 1316, 1320–21 (9th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78

L.Ed.2d 366 (1983). Although the mailings alerted the investors to Stein's misdeeds, they also falsely assured them that repayment would be forthcoming, making them less likely to press either the government for continued investigation, or Stein for immediate repayment.

We affirm Stein's convictions for mail fraud, except as to Count 8. The government concedes there was insufficient evidence that the letter on which Count 8 is predicated was mailed. We have reviewed the record and agree. Accordingly, Stein's conviction on Count 8 is reversed.

**B. Money Laundering**

Stein argues part of the district court's instructions to the jury on the money laundering counts were negated by a general instruction on when an act is done "knowingly," and this relieved the prosecution of its burden to prove an essential element of the money laundering counts.

"Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed *de novo.*" *United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992).

18 U.S.C. § 1956 provides in pertinent part:

Whoever, *knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity,* conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity, [is guilty of money laundering.]

. . . .

[T]he term *'knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity'* means that the person knew

---

1. Stein's implicit contention that because the government "required" the mailings, the mail fraud statute is inapplicable, is without merit. But for Stein's fraudulent scheme, the mailings would never have occurred. *See United States v. Mitchell,* 744 F.2d 701, 704 (9th Cir.1984). Moreover, the mailings were not required under state law. *See United States v. Bernhardt,* 840

F.2d 1441, 1447 (9th Cir.1988), *cert. denied,* 488 U.S. 954, 109 S.Ct. 389, 102 L.Ed.2d 379 (1988). The mailings were "required" only in the sense that if Stein chose not to sign the Consent Order, the state would launch a formal investigation. Confronted with this choice, Stein used the mailings to forestall such an investigation and hold his investors at bay.

the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under . . . law.

18 U.S.C. § 1956 (1988) (emphasis added).

■ A distinction must be drawn between the two types of knowledge implicated by the money laundering statute. While to sustain a conviction the defendant must have known that the primary predicate activity (in this case securities, mail and wire fraud) was unlawful, see United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991), he need not have known that the secondary act of laundering the proceeds was unlawful.

As part of its specific money laundering instruction, the district court instructed the jury that "[i]n order for the defendant to be found guilty of that charge the government must prove each of the following elements beyond a reasonable doubt: . . . . Second, the defendant knew that the property represented the proceeds of securities fraud, mail fraud, or wire fraud."

In a later general instruction, the district court instructed the jury that "[a]n act is done knowingly if the defendant is aware of the act and doesn't act through ignorance, mistake or accident. The Government is not required to prove that the defendant knew that his acts or omissions were unlawful." This general instruction conflicts with the district court's previous specific instruction on money laundering, because it purports to apply to all of the defendant's actions—his predicate acts of fraud as well as his secondary act of money laundering.

■ Where two instructions conflict, a reviewing court cannot presume that the jury followed the correct one. Francis v. Franklin, 471 U.S. 307, 322, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985). Here, by applying the later general instruction, a jury could convict Stein without finding that he knew his predicate acts of fraud were unlawful. Taken as a whole, the instructions omitted an element of the offense as surely as if the district court had failed to mention the element altogether.

"If jury instructions omit an element of the offense, constitutional error results because the jury has been precluded from finding each fact necessary to convict a defendant." Martinez v. Borg, 937 F.2d 422, 424 (9th Cir.1991). Such an error cannot be harmless. Under recent Supreme Court authority,

we may no longer consider the strength of evidence and determine whether it was so clear that the jury would have found the element of a crime to exist, had it been properly instructed, but, instead, we must determine whether the jury was actually able to consider that evidence under the instructions given by the court. When proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all.

United States v. Gaudin, 28 F.3d 943, 951 (9th Cir.1994) (emphasis added).

The harmless error analysis is incapable of being applied here. "[T]here is no object . . . upon which harmless-error scrutiny can operate," because the jury was effectively instructed to disregard the knowledge element of the offense. Sullivan v. Louisiana, — U.S. ——, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). We reverse Stein's convictions for money laundering on Counts 35, 36 and 37.

## C. Sentence Based on Money Laundering Counts

Stein was sentenced under the money laundering guidelines, giving him a higher base offense level than the fraud guidelines would have yielded. Because we reverse Stein's money laundering convictions, and his conviction on Count 8 of the mail fraud counts, we vacate his sentence and remand to the district court for resentencing on the basis of the remaining mail fraud, securities fraud and wire fraud counts.

## D. Enhancement for Obstruction of Justice

■ At trial, Stein attempted to impeach a witness by using a forged document. The

district court found Stein knew this document was forged, and for this reason increased his offense level for obstruction of justice.

It is undisputed that "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" can result in a sentencing enhancement for obstruction of justice. U.S.S.G. § 3C1.1, n. 3(c). Stein argues, however, that the government failed to prove by a preponderance of the evidence that he "willfully" attempted to obstruct justice. He relies on the testimony of his privately-retained handwriting expert as well as the results of a privately-administered polygraph exam, which he contends prove he is innocent of the forgery.

The probative force of this evidence is questionable. The handwriting expert merely offered the "cautious" opinion that it was "unlikely" Stein himself forged the document. Furthermore, as the district court noted, the polygraph report was too conclusory to be probative. Finally, and most significantly, neither the polygraph report nor the expert testimony addresses the question whether Stein offered the document to the court knowing it had been forged by someone. The record is replete with examples of Stein using forged documents as a means of evading detection. Against this background, the district court's factual finding that Stein willfully submitted a forged document was not clearly erroneous. *See United States v. Karlic*, 997 F.2d 564, 568 (9th Cir.1993) (district court's factual findings in support of a sentence enhancement reviewed for clear error).

Enhancement of Stein's sentence for obstruction of justice was appropriate.

## CONCLUSION

Stein's convictions for money laundering on Counts 35, 36 and 37, and his conviction for mail fraud on Count 8, are reversed. His sentence is vacated. We remand to the district court for resentencing on the remaining mail fraud, securities fraud and wire fraud counts, which convictions we affirm.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.