52 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David R. KNAPP, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
GRK CORPORATION, dba Knapp Ford/Mercury, Defendant-Appellant.
 Nos. 94-10022, 94-10023.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 17, 1994.
Decided April 5, 1995.
 
 1
 Before: ALARCON and HALL, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendants/Appellants David R. Knapp and GRK Corporation dba Knapp Ford/Mercury (collectively "Knapp") appeal jointly from a conviction and sentence for (1) conspiracy to money launder, 18 U.S.C. Sec. 371; (2) money laundering, 18 U.S.C. Sec. 1956(a)(1)(B)(i); and (3) filing false currency transaction reports, 26 U.S.C. Secs. 6050I(f)(1)(B) and 7206(1) & (2). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 DISCUSSION
 
 4
 I. Jury Instructions.
 
 
 5
 The standard of review of a district court's denial of a proposed jury instruction is unresolved in this circuit. United States v. Woodley, 9 F.3d 774, 779 (9th Cir.1993). The standard is either de novo or abuse of discretion. Id. "We examine 'whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." United States v. Powell, 955 F.2d 1206, 1210 (9th Cir.1992) (quoting United States v. Kessi, 868 F.2d 1097, 1101 (9th Cir.1989)). We need not resolve the standard of review here because the conflict is not dispositive; Knapp's arguments fail under either standard.
 
 
 6
 A. Conspiracy Instructions.
 
 
 7
 The trial court gave a virtually unmodified version of Ninth Circuit Model Criminal Instruction 8.05A on conspiracy:
 
 
 8
 The defendant David R. Knapp is charged in Count 1 of the indictment with conspiracy to engage in money laundering in violation of United States law. In order for a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:
 
 
 9
 First, beginning on or about May 9th, 1989, and ending on or about October 6, 1989, there was an agreement between two or more persons to commit at least one crime charged in the indictment; second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. All of you must agree on a particular overt act that you find was committed.
 
 
 10
 ....
 
 
 11
 For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.... You must find there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy. And here the object of the conspiracy in all three cases is money laundering.[1]
 
 
 12
 ....
 
 
 13
 An overt act does not, of itself, have to be unlawful.... The government is not required to prove that the defendant personally did one of the overt acts. Once you have decided that the defendant was a member of a conspiracy, the defendant is responsible for what other conspirators said or did to carry out the conspiracy, whether or not the defendant knew what they said or did.
 
 
 14
 ....
 
 
 15
 Even though a defendant did not directly conspire with every other conspirator in the overall scheme, the defendant, would, in effect, have agreed to participate in the conspiracy if it is proved beyond a reasonable doubt that the defendant conspired with one or more conspirators to carry out at least one of the objects of the conspiracy, the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired, and the defendant had reason to believe that whatever benefits the defendant might receive from the conspiracy were probably dependent upon the success of the entire venture. (Emphasis added).
 
 
 16
 1. Amendment of the Indictment.
 
 
 17
 Knapp argues that the emphasized phrases materially amended the indictment by allowing the jury to convict for a conspiracy other than to money launder. United States v. Vowiell, 869 F.2d 1264, 1271 (9th Cir.1989) ("It is plain error for a district court to give instructions that permit the jury to convict the defendant for a crime that was not charged, because the court may not substantially amend the indictment through its instructions to the jury.") (citations and quotation marks omitted). The 7-count indictment contained two substantive crimes--three counts of money laundering and two counts of filing false currency transaction reports--but only charged for conspiracy to money launder.[2] Thus, Knapp contends that the instructions allowed the jury to convict him for conspiring to file false currency transaction reports.
 
 
 18
 The court reviews de novo whether there has been a material amendment of an indictment. United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir.), cert. denied, 498 U.S. 870 (1990). If there was error here, however, it was not so much an amendment to the indictment as it was an incorrect explanation of the conspiracy charge in the indictment. No one is contending that the government intended to convict Knapp for conspiracy to file false reports.
 
 
 19
 Knapp argues that, taking the instructions literally, the jury could have found a "conspiracy to money launder" by finding that Knapp agreed with Moreno to file false currency transaction reports. Taken in context, however, it is more likely that the jury indeed found a "conspiracy to money launder" by finding that Knapp agreed with Moreno to money launder.
 
 
 20
 In its instructions, the trial court clearly explained that it was defining each count separately. The first sentence of the instruction quoted previously reads: "[t]he defendant David R. Knapp is charged in Count 1 of the indictment with conspiracy to engage in money laundering in violation of United States law" (emphasis added). After the conspiracy instruction, the court explained: "[n]ow I'm going to tell you the elements of the crime of money laundering. Counts 2, 4, and 5 of the indictment charge Defendant David R. Knapp with money laundering." After explaining those elements, the court continued: "[n]ow I'm going to define the elements of the crime of filing a false report." Additionally, the verdict form was split into counts; count one was titled "18 USC 371 AND 1956(a)(1)(B)(i)--Conspiracy to Engage in Money Laundering." (emphasis added).
 
 
 21
 When reading the written instructions, the trial court apparently realized that the references in the pattern instruction to "at least one crime in the indictment" and "at least one of the objects of the conspiracy" were potentially confusing. The court extemporaneously added the sentence (highlighted above): "[a]nd here the object of the conspiracy in all three cases [all three vehicle transactions] is money laundering."[3] This sentence clarified that the conspiracy was for money-laundering and not conspiracy to commit some other crime.
 
 
 22
 Additionally, two of the overt acts of the money-laundering conspiracy count were filling out IRS Form 8300s in the name of others besides Moreno. In essence, the false currency report counts also constituted overt acts. Thus, even if the jury misunderstood the instruction to mean that false reporting was required for money laundering, the error was harmless.
 
 
 23
 In sum, when reading the instructions as a whole, we find no reversible error.
 
 
 24
 2. Unanimity Instruction.
 
 
 25
 Knapp also argues that the conspiracy instruction was insufficient because the court did not give a specific unanimity instruction. Knapp cites United States v. Gilley, 836 F.2d 1206, 1211-13 (9th Cir.1988). This argument fails.
 
 In Gilley, this court held:
 
 26
 [u]sually a general unanimity instruction suffices. In United States v. Echeverry, 698 F.2d 375 (9th Cir.1983), modified, 719 F.2d 974 (9th Cir.1983), however, we held that a different rule applies when a "genuine possibility" of juror confusion exists.
 
 
 27
 836 F.2d at 1211 (citation omitted). Gilley involved "a genuine possibility that the jurors were not unanimous as to the conjunction of two of the material elements of the crime." Id. at 1212. In turn, Echeverry involved multiple schemes where defendant committed different acts, and the jury indicated confusion concerning multiple conspiracies. 719 F.2d at 975.
 
 
 28
 Here, there is no genuine possibility of such jury confusion. The conspiracy here was relatively simple. As outlined in the indictment, the conspiracy involved Knapp agreeing with Moreno, and others unknown to the grand jury, to money launder between May 9, 1989 and Oct. 6, 1989. The indictment lists nine possible overt acts. A general unanimity instruction was sufficient. United States v. Ferris, 719 F.2d 1405 (9th Cir.1983). Moreover, Knapp did not object on these grounds below and did not submit a conspiracy instruction with specific unanimity provisions.
 
 
 29
 3. Knapp's Defense Instruction.
 
 
 30
 Knapp argues that the court erred in refusing the following instruction explaining his defense theory:
 
 
 31
 DAVID KNAPP contends that he never agreed with IGNACIO MORENO to conceal the source of money, or that he knew the money was derived from narcotics trafficking.
 
 
 32
 This proposed instruction added little if anything to the conspiracy instructions given by the court. The court instructed that the government must prove the elements of conspiracy beyond a reasonable doubt. Refusing the instruction was not error. United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.) ("nor is [a defendant] entitled to an instruction that merely duplicates what the jury has already been told"), cert. denied, 113 S.Ct. 504 (1992).
 
 
 33
 B. Money-Laundering Instructions.
 
 
 34
 1. Taint by Conspiracy Instructions.
 
 
 35
 Knapp argues that error in the conspiracy instructions tainted the money-laundering instructions. He again focuses on the phrase "[a]nd here the object of the conspiracy in all three cases is money laundering." He claims that the phrase directed the jury to find money laundering. However, as explained above, the phrase taken in context merely explained the conspiracy count. The phrase was not misleading and did not direct the jury to find Knapp guilty on the substantive money-laundering counts.
 
 
 36
 2. Pinkerton Liability.
 
 
 37
 Next, Knapp takes issue with the highlighted sentence in the following paragraph of the conspiracy instruction:
 
 
 38
 An overt act does not, of itself, have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts. Once you have decided that the defendant was a member of a conspiracy, the defendant is responsible for what other conspirators said or did to carry out the conspiracy, whether or not the defendant knew what they said or did.
 
 
 39
 Knapp contends that the sentence imposed Pinkerton liability; he asserts error in not giving a corresponding foreseeability instruction. He appears to be arguing that the jury could have convicted him on the substantive money-laundering counts based on Moreno 's money-laundering activities in a conspiracy to file false currency reports.
 
 
 40
 Taken in context, however, the sentence refers to overt acts making up the conspiracy, not other substantive crimes committed in furtherance of the conspiracy. The sentence correctly instructed that Knapp need not have personally committed an overt act towards commission of the objective of the conspiracy.
 
 
 41
 3. Effect of Ratzlaf v. United States.
 
 
 42
 Knapp next contends that under 18 U.S.C. Sec. 1956(a)(1)(B)(i) the government is required to prove he knew money laundering was unlawful. The trial court gave no such instruction, thus Knapp asserts error. Knapp relies on Ratzlaf v. United States, 114 S.Ct. 655 (1994).
 
 
 43
 In Ratzlaf, the Court was construing the statutory language "willfully violated." The court reasoned
 
 
 44
 We do not dishonor the venerable principle that ignorance of the law generally is no defense to a criminal charge. In particular contexts, however, Congress may decree otherwise. That, we hold, is what Congress has done with respect to 31 U.S.C. Sec. 5322(a) [providing "a person willfully violating this subchapter ... shall be fined not more than $250,000, or imprisoned for not more than five years, or both"] and the provisions it controls.
 
 
 45
 Id. at 663 (citations omitted). In this case, the money laundering statute at issue, 18 U.S.C. Sec. 1956(a)(1)(B)(i), does not require "willfulness." Thus, Ratzlaf does not apply. See United States v. Santos, 20 F.3d 280, 284 n. 3 (7th Cir.1994) ("Unlike the criminal enforcement provision at issue in Ratzlaf, 31 U.S.C. Sec. 5322(a), the money laundering statutes ... 18 U.S.C. Secs. 1956(a)(1)(B)(i) and 1956(a)(3)(A), do not contain a willfulness requirement and, instead, contain specific and detailed requirements concerning the defendant's intent and knowledge.").
 
 
 46
 4. Effect of United States v. Stein.
 
 
 47
 The final issue on the money-laundering counts is whether the general jury instruction defining "knowingly" negated an element of money laundering from the jury's consideration. Knapp cites to the recent decision, United States v. Stein, 37 F.3d 1407 (9th Cir.1994), cert. denied, 63 USLW 3628 (Feb. 21, 1995).
 
 
 48
 "Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo." United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992).
 
 
 49
 The Stein court reversed convictions for money laundering because a general instruction defining "knowingly" conflicted with the money-laundering instruction. The court distinguished between the two types of "knowledge" in money laundering: "[w]hile to sustain a conviction the defendant must have known that the primary predicate activity (in this case [Stein ] securities, mail and wire fraud) was unlawful, he need not have known that the secondary act of laundering the proceeds was unlawful." Stein, 37 F.3d at 1410 (citation omitted).
 
 
 50
 In Stein, the trial court instructed the jury "the government must prove ... the defendant knew that the property represented the proceeds of securities fraud, mail fraud, or wire fraud." Id. The court then gave a general instruction on knowledge: "[a]n act is done knowingly if the defendant is aware of the act and doesn't act through ignorance, mistake or accident. The Government is not required to prove that the defendant knew that his acts or omissions were unlawful." Id. This general instruction is Ninth Circuit Model Criminal Instruction No. 5.06 (which was given in Knapp's case). The Stein court held:
 
 
 51
 This general instruction conflicts with the district court's previous instruction on money laundering, because it purports to apply to all of the defendant's actions--his predicate acts of fraud as well as his secondary act of money laundering.
 
 
 52
 Where two instructions conflict, a reviewing court cannot presume that the jury followed the correct one. Here, by applying the later general instruction, a jury could convict Stein without finding that he knew his predicate acts of fraud were unlawful. Taken as a whole, the instructions omitted an element of the offense.... Such error cannot be harmless.
 
 
 53
 Id.
 
 
 54
 The instructions in Knapp's case were similar, but with two critical differences. Here, instruction No. 18 gave the elements of money laundering:
 
 
 55
 To establish the crime [of money laundering], the government must prove beyond a reasonable doubt the following four elements:
 
 
 56
 (1) The defendant knowingly conducted a financial transaction.
 
 
 57
 (2) The defendant must know that the transaction involved property which represented the proceeds of some form of unlawful activity.
 
 
 58
 (3) The transaction involved property which in fact was drug trafficking proceeds.
 
 
 59
 (4) The defendant engaged in the transaction with the intent to conceal or disguise the nature, location, source, ownership, or control of property which was drug trafficking proceeds. (emphasis added).
 
 
 60
 As in Stein, the money-laundering instruction was followed immediately by a general instruction defining "knowingly:"
 
 
 61
 An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake or accident. As to money laundering, the government is not required to prove that the defendant knew that his acts or omissions were unlawful. (emphasis added).
 
 
 62
 The emphasized phrase "as to money laundering" distinguishes the latter instruction from the one given in Stein. In Stein, the court reasoned that the "knowingly" instruction purported to apply to both the object of the conspiracy and to the money laundering act itself. The added phrase "as to money laundering" made sufficiently clear that the corresponding sentence applied only to the crime itself.
 
 
 63
 Moreover, the court gave the following additional instruction not given in Stein:
 
 
 64
 The term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form of activity that constitutes a felony under federal or state law. Drug trafficking is a felony under federal or state law.
 
 
 65
 Combined, these differences distinguish Stein. These differences directly address the possibility that the jury could have omitted the second element of money laundering and convicted without finding Knapp knew the money represented illegal drug proceeds.
 
 C. Currency Reporting Counts
 
 66
 Next, Knapp attacks his convictions under 26 U.S.C. Secs. 7206(1) & (2) for incorrectly completing the IRS Form 8300s.
 
 
 67
 1. Willfulness Definition.
 
 
 68
 Knapp argues that the following "willfulness" instruction given by the trial court was wrong:
 
 
 69
 An act was done willfully, as that term is used in the preceding instruction [on filing a false form 8300], if a defendant acted voluntarily and intentionally to violate a known legal duty or acted with a bad purpose or evil motive. Negligent conduct is not sufficient to constitute willfulness. (emphasis added).
 
 
 70
 Knapp argues that the highlighted phrase is incorrect. He cites United States v. Powell, 955 F.2d 1206 (9th Cir.1991) purportedly as support. His argument fails.
 
 
 71
 Indeed, the Powell court noted that "[a]n instruction on willfulness need not include "bad faith" or "bad purpose. Neither bad purpose nor evil motive is an independent element of a willful failure to file under the statutory requirement to file tax returns, 26 U.S.C. Sec. 7203." 955 F.2d at 1210 (citations omitted). However, the court went on to hold: "[t]hus the government may prove willful conduct by establishing either: (1) that the defendant acted with a bad purpose or evil motive, or (2) that the defendant voluntary, intentionally violated a known legal duty." Id. at 1211 (emphasis in original). The court's instruction here tracks Powell verbatim, and, accordingly, we find no error.
 
 
 72
 2. Effect of United States v. Gaudin.
 
 
 73
 Next, Knapp asserts that pursuant to the recent Ninth Circuit en banc decision, United States v. Gaudin, 28 F.3d 943 (9th Cir.1994), cert. granted, 115 S.Ct. 713 (Jan. 6, 1995) (No. 94-514), the trial court erred in treating the "materiality" element of the charges under 26 U.S.C. Secs. 7206(1) & (2) as a question of law, rather than submitting it to the jury.
 
 
 74
 In Gaudin, the court held by a 6-5 margin that "materiality" is a question of fact in a charge under 18 U.S.C. Sec. 1001. Gaudin upheld an earlier decision holding the same, United States v. Valdez, 594 F.2d 725, 728-29 (9th Cir.1979). The Gaudin court reasoned that recent Supreme Court authority, beginning with In re Winship, 397 U.S. 358 (1970) and most recently in Sullivan v. Louisiana, 113 S.Ct. 2078 (1993), has emphasized the constitutional requirement that the jury must find a defendant guilty beyond a reasonable doubt of each element of a crime with which the defendant is charged. Gaudin, 28 F.3d at 945-46.
 
 
 75
 Because Gaudin decided the materiality question under 18 U.S.C. Sec. 1001, it does not control the question under 26 U.S.C. Sec. 7206(1) & (2) at issue here. The controlling Ninth Circuit decision on the precise issue before the court is United States v. Flake, 746 F.2d 535 (9th Cir.1984), cert. denied, 469 U.S. 1225 (1985).
 
 
 76
 In Flake, the appellant argued that because Valdez required materiality to be decided by a jury under Sec. 1001, it must also do so under Sec. 7206(1). The Flake court disagreed, adopting precedent directly on point from other circuits, and held that materiality is a question of law under 26 U.S.C. Sec. 7206(1). 746 F.2d at 537. Gaudin notwithstanding, Flake is still good law. Gaudin did not overrule Flake, which is directly on point on the issue now before the court. Therefore, the trial court committed no error.
 
 
 77
 II. Alleged Sentencing Errors.
 
 
 78
 Knapp also challenges his sentence on several grounds.
 
 
 79
 A. Acceptance of Responsibility.
 
 
 80
 Despite a full jury trial, Knapp argued that he deserved a 3-point reduction in his sentence under Sentencing Guidelines Sec. 3E1.1 for acceptance of responsibility because he cooperated fully in the grand jury investigation.
 
 
 81
 A district court's refusal to grant a reduction for acceptance of responsibility is a factual determination; the clearly erroneous standard applies. United States v. Innie, 7 F.3d 840, 847-48 (9th Cir.1993), cert. denied, 114 S.Ct. 1567 (1994).
 
 
 82
 Knapp's presentence report stated that he did not demonstrate an acceptance of responsibility. After objections and a response, the trial court found that Knapp never admitted that he committed money laundering. There is nothing in the record to leave a definite and firm conviction that this finding was wrong.
 
 
 83
 While the sentencing guidelines do not preclude a finding of acceptance of responsibility if a defendant proceeds to trial, such occasions are rare. U.S.S.G. Sec. 3E1.1, Application Note 2. The government acknowledges that Knapp admitted he sold vehicles to Moreno, but points out that he has never admitted that he intended to launder money. To accept responsibility, one should admit the requisite criminal intent. United States v. Barron-Rivera, 922 F.2d 549, 552-53 (9th Cir.1991). The district court committed no clear error here.
 
 
 84
 B. Refusal to Depart Downward.
 
 
 85
 Several of Knapp's arguments concern discretionary decisions of the court refusing to depart downward. The asserted grounds for departure included (1) aberrant behavior, (2) the offense was outside the heartland, and (3) extraordinary family or business circumstances. These arguments fail because a trial court's refusal to depart downward from the sentencing guidelines is not subject to appellate review. United States v. Cipollone, 951 F.2d 1057, 1058 (9th Cir.1991). However, a court's determination that it has no authority to depart is a question of law which is reviewable. United States v. Cook, 938 F.2d 149, 152 (9th Cir.1991).
 
 
 86
 The court determined it had no authority to depart downward for Knapp's rehabilitation from drug abuse prior to his arrest, relying on United States v. Martin, 938 F.2d 162, 163-64 (9th Cir.1991), cert. denied, 112 S.Ct. 1679 (1992) (holding that U.S.S.G. Secs. 5H1.3 and 5H1.4 precluded downward departures for rehabilitation from drug abuse). The Martin court reasoned that permitting such departures would unfairly benefit defendants who have drug problems; such departures would not be available to defendants without drug problems. Although Martin involved post-arrest rehabilitation, the reasoning also applies here with pre-arrest rehabilitation. We find no error.
 
 
 87
 The court also determined it could not depart downward for Knapp's alleged diminished mental capacity. Knapp submitted evidence that he was suffering from something similar to a post-traumatic stress disorder resulting from the treatment he received while recovering from drug usage. U.S.S.G. Sec. 5K2.13 allows a downward departure for diminished capacity if a defendant's non-violent offense was committed while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants. Assuming Knapp actually suffered diminished capacity as a result of detoxification, such diminished capacity was a direct and foreseeable result of his prior voluntary use of drugs. The court correctly found it could not depart downward in Knapp's case.[4]
 
 
 88
 Next, Knapp argues that the court erred when it did not comment on three of his proffered reasons for downward departure. Where the authority to depart is not in dispute and the court does not comment on the proffered grounds, this court may assume the trial court concluded downward departure was inappropriate. United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991). Thus, the trial court's decision is not reviewable. Id.
 
 
 89
 C. Alleged Bias.
 
 
 90
 Knapp argues that the trial court misconstrued the record and demonstrated bias in sentencing him. This argument is without merit. Knapp cites some incidents where the court appeared to criticize Knapp for past drug use. Such comments do not require reversal, even if the court was ill-disposed towards Knapp. Liteky v. United States, 114 S.Ct. 1147 (1994) (a trial judge after completion of trial might be ill-disposed towards a defendant; such opinions are proper unless the court displays a deep-seated favoritism or antagonism that renders a fair judgment impossible). Finally, Knapp complains that the trial judge revealed during sentencing that he had represented automobile dealers when in private practice. This information is insignificant to show bias.
 
 
 91
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This sentence differs from the pattern instruction and is not in the written copy of the court's instructions
 
 
 [2]
 The seventh count was for forfeiture, 18 U.S.C. Sec. 982
 
 
 [3]
 Knapp also contends that, by this phrase, the court directed a verdict against him on a disputed element of the conspiracy count. He apparently argues that the phrase told the jury that there was a conspiracy to money-launder. Taken in context, however, the court clearly was referring to the instructions, not to the substance of the count
 
 
 [4]
 Knapp cites United States v. Cantu, 12 F.3d 1506 (9th Cir.1993) in support. The court indicated that a defendant whose reduced capacity was caused in part by drug or alcohol abuse is not automatically disqualified from a downward departure. 12 F.3d at 1514 (emphasis in original). Here, the diminished capacity was caused entirely by abuse of drugs