77 F.3d 490
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Crispin Rodriguez BARRON, Defendant-Appellant.
 No. 95-50125.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1996.
Decided Feb. 15, 1996.
 
 Before: POOLE, WIGGINS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Crispin Rodriguez Barron appeals his conviction and sentence. A jury convicted Barron of conspiracy to aid and abet the manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846; conspiracy to distribute a listed/precursor chemical in violation of 21 U.S.C. §§ 841(d)(2), 846; distribution of a listed/precursor chemical in violation of 21 U.S.C. § 841(d)(2); conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(g); aiding and abetting the laundering of monetary instruments in violation of 18 U.S.C. § 2. The district court sentenced Barron to 235 months in prison under U.S.S.G. § 1D1.1. We have jurisdiction, 28 U.S.C. § 1291, and affirm.
 
 
 3
 * The district court did not abuse its discretion by permitting special agent Van Kirk to testify that Hernandez was afraid of Barron. Hernandez was called to describe Barron's large cash deposits at the bank, which was critical to the government's case. When he equivocated, the government sought to impeach him. Although Hernandez had initially indicated that he didn't want to testify, he indicated that he would when he was subpoenaed. Nothing in the record suggests that the government knew that Hernandez would not be forthcoming when it put him on the stand. Accordingly, the district court did not err. See United States v. Crouch, 731 F.2d 621, 623-24 (9th Cir.1984), cert. denied, 469 U.S. 1105 (1985).
 
 II
 
 4
 Admitting evidence of three gun permits found on Barron when he was arrested was not plain error. They were relevant to connect Barron's signature to signatures on other documents, and were not unduly prejudicial because Barron was a security guard who would be expected to have a gun permit for his job. There was no evidence that Barron was a violent person and the government didn't argue that he was. Given all the evidence in the case, we cannot say that his substantial rights were affected by this evidence.
 
 III
 
 5
 Barron argues that the court should not have allowed Van Kirk to testify about Barron's interactions with the confidential informant (CI) because the Government did not make "reasonable efforts" to produce him, as required under United States v. Montgomery, 998 F.2d 1468, 1476 (9th Cir.1993). Unlike Montgomery, here there was neither a request for production of the CI nor a court order that the CI be produced. There was no abuse of discretion.
 
 IV
 
 6
 Barron contends that the district court erred in failing to give Barron's proposed instruction on his theory of defense. There was no error, as his requested instruction was adequately covered by the instructions that were given. United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994) (citation omitted).
 
 V
 
 7
 Calculating Barron's sentence based on a base offense level of 38 was well supported in the record. Under the Sentencing Guidelines, each conspirator is to be sentenced on the basis of the quantity of drugs that he "reasonably foresaw" or that "fell within 'the scope' of his particular agreement." United States v. Petty, 992 F.2d 887, 889 (9th Cir.1993). Barron was involved in a $1 million enterprise; 1,500 kilograms (or 3,300 pounds) of methamphetamine could be manufactured from the 40,600 pounds of hydriodic acid at issue; three of the conspirators each received about $150,000 in cash, and Barron withdrew $1,200 every few weeks for himself and was able to purchase a new $55,000 BMW (in addition to his three new $25,000 trucks) during the course of this conspiracy. The evidence also showed that Barron knew that the hydriodic acid would be used to manufacture "crystal," he personally made many of the purchases of acid and cash deposits, and the accounts were in his name. He set up the corporation, signed for the lease of the warehouse, signed the purchase authorizations, personally executed several deliveries, removed labels and the like. The district court therefore did not err in finding that it was reasonably foreseeable to Barron that at least 30 pounds of methamphetamine could be produced.
 
 VI
 
 8
 Counsel agreed at argument that reversal was not required on account of Stein[1] error unless we reversed on the other issues raised since it makes no difference in light of Barron's sentence on the remaining counts of conviction.
 
 
 9
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 United States v. Stein, 37 F.3d 1407 (9th Cir.1994), cert. denied, 115 S.Ct. 1170 (1995)