**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**C. Gene GRAVENMEIR, Defendant–
Appellant.**

**No. 96–10295.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1997.

Decided Aug. 8, 1997.

---

Sandra Gillies, Woodland, California, for defendant–appellant.

Eugene Illovsky and Mark L. Krotoski, Assistant United States Attorneys, Sacramento, California, for plaintiff–appellee.

Before: REINHARDT, T.G. NELSON and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Gene Gravenmeir was convicted of being a felon in possession of a firearm and of possessing a machinegun, in violation of 18 U.S.C. § 922(g)(1) & (o). Gravenmeir alleges several defects in the jury instructions, challenges the sufficiency of the evidence on the § 922(o) charge, and challenges the constitutionality of both provisions as being in excess of Congress's power under the Commerce Clause.

## I. Facts

While executing a search warrant at Gravenmeir's residence in 1995, officers recovered a loaded 9mm Uzi, five Uzi magazine clips, a loaded .12 gauge Winchester shotgun, plus several other firearms and more ammunition. The Uzi had a three-position selector switch, instead of the typical two-position switch for single and semi-automatic fire. A test revealed that the firearm was a machinegun and would operate in both semi-automatic and automatic modes. In addition, officers located some internal Uzi parts in a filing cabinet. The search also yielded three copies of "Machine Gun News" magazine, addressed to Gravenmeir as a subscriber, and a copy of "The Poor Man's James Bond" book, which included a chapter on how to convert semi-automatic weapons into machineguns. Gravenmeir was charged with being a felon in possession of two firearms (a converted automatic machinegun and a Winchester .12 gauge shotgun) [1] that had traveled in interstate or foreign commerce, and with possession of a machinegun. [2]

At trial, a former ranch hand of Gravenmeir's, Christopher Scanland, testified that one night when he and some other ranch hands were having dinner at Gravenmeir's house, Gravenmeir pulled out a gun and told the men that it was an Uzi. Gravenmeir told Scanland that a single pull of the trigger could discharge all the bullets, or just a few rounds could be discharged by a light tap on the trigger.

Robert Burrows testified as an expert for the government; Burrows reported that the Uzi found in Gravenmeir's possession was originally manufactured in Israel and imported into the United States by a Philadelphia company. The Winchester shotgun had, according to Burrows, been manufactured in Connecticut. Burrows also confirmed that the Uzi had been converted to be capable of fully automatic fire (able to discharge all rounds with a single trigger pull) and that internal Uzi parts found in Gravenmeir's home were those that would need to be removed to make such a weapon fully automatic.

---

1. Gravenmeir had 1995 felony convictions for procuring or offering false or forged instruments for recording in violation of § 115 of the California Penal Code and for grand theft, in violation of § 487 of the California Penal Code.

2. Gravenmeir was also charged with possessing an unregistered sawed-off shotgun, but the government moved to dismiss this count prior to trial.

The jury convicted Gravenmeir on both counts. We affirm his conviction.

## II. Discussion

### A. The Elements of § 922(o)

■ 18 U.S.C. § 922(o) provides in relevant part:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to . . .

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect [May 19, 1986].

■ Gravenmeir claims that paragraph two contains additional elements of the crime that the government must prove, and therefore the jury instructions, which did not require the jury to find that the government proved this additional element, were deficient.[3] We review de novo whether an instruction misstates or fails to state the elements of a statutory crime. *United States v. Tagalicud,* 84 F.3d 1180, 1183–84 (9th Cir. 1996).

■ We agree with the Eighth Circuit that, rather than setting forth additional elements of the offense that the government must prove, "[t]he exceptions contained in part (2) of the subsection establish affirmative defenses to the defined offense." *United States v. Just,* 74 F.3d 902, 904 (8th Cir. 1996). This interpretation is consistent with the Supreme Court's settled rule that "an indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause. . . ." *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922). This reading of the statute is also consistent with this circuit's "well-established rule . . . that a defendant who relies upon an exception to a statute . . . has the burden of establishing and showing that he comes within the exception." *United States v. Freter,*

31 F.3d 783, 788 (9th Cir.1994)(internal quotation omitted). Where, as in this case, the "statutory prohibition is broad and an exception is narrow, it is more probable that the exception is an affirmative defense." *Id.*

Gravenmeir correctly notes that, in finding exceptions to be affirmative defenses, we have at times discussed the relative burdens of the government versus the defendant with respect to the production of evidence. *See id.* at 788; *United States v. Hester,* 719 F.2d 1041, 1043 (9th Cir.1983). In this case, Gravenmeir contends that the government could have used the serial number to determine when the gun was manufactured, and if that date was after May 1986, established that Gravenmeir could not have lawfully possessed the gun.

That the government *could* "prove the negative" in this case, however, does not mean that it would be easier for the government to do so. More importantly, that the government *could* disprove lawful ownership does not mean that the statute requires it to do so. The statute in this instance clearly sets out the elements of the offense in one paragraph and the exceptions to the offense in another. 18 U.S.C. § 922(o). If the statute were less explicit or the burden on the defendant overbearing, Gravenmeir's argument might make more sense. Gravenmeir provides no good reason why we should not apply our well-settled rule that a defendant bears the burden of proving he comes within an exception to an offense. *Freter,* 31 F.3d at 788.

### B. Undue Emphasis

■ The court instructed the jury that with respect to § 922(o), the government had to prove:

First, that the defendant knowingly possessed a machine gun; and

second, the defendant knew that the firearm was a machine gun.

As used in this instruction, the term machine gun includes any weapon which shoots, is designed to shoot or can be

---

**3.** Gravenmeir also claims that the government produced insufficient evidence on this "element" to support the jury's verdict. This claim is fore-

closed by our decision that paragraph two sets forth an affirmative defense, rather than an element for the government to prove.

readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.

Knowledge that the firearm is a machine gun may be inferred if a visual inspection of the firearm would alert a reasonable person that it is capable of automatic fire.

Gravenmeir contends that the final part of this instruction, although an accurate statement of law, improperly emphasized the government's testimony concerning the ability to discern the automatic nature of the gun from its external appearance. He claims this instruction gave the impression the court considered this factor particularly important and focused the jury's attention away from an important defense argument: that Gravenmeir lacked knowledge because there was no evidence that the gun had been fired.

We review the trial court's formulation of a jury instruction for an abuse of discretion. *United States v. Chastain,* 84 F.3d 321, 323 (9th Cir.1996). In doing so, we look at the instructions as a whole to see if they are misleading or inadequate to guide the jury's deliberation. *United States v. de Cruz,* 82 F.3d 856, 864 (9th Cir.1996).

When the instructions are viewed as a whole, we find that the judge did not abuse his discretion. The alleged error was only one sentence in fourteen pages of jury instructions, in which the jury was told that it could, but did not have to, consider that knowledge could be inferred from the external characteristics of the firearm. This did not impermissibly highlight the prosecution's case so as to imply the guilt of the accused. *Cf. United States v. Carter,* 491 F.2d 625, 633 (5th Cir.1974) (judge's hypothetical examples in response to jury questions both pointed to guilt of the accused). The district judge here

repeatedly emphasized that the jury was to consider all of the evidence in the case, that the jury was the sole finder of fact and that the jury should not be influenced by anything the court may have said or done, as the court did not intend to suggest what the verdict should be. *Cf. Guam v. McGravey,* 14 F.3d 1344, 1346–47 (9th Cir.1994) (no undue emphasis from specific instruction on victim's testimony not needing corroboration where numerous instructions made clear each witness to be judged by same standard).

■ In any event, even if the formulation of the instruction were somehow an abuse of discretion, the error, if any, would be harmless because of the extensive evidence of Gravenmeir's knowledge. In addition to the appearance of the gun: (1) Scanland testified that Gravenmeir explained the automatic function of the gun to him and told Scanland that he owned "a Thompson machinegun"; (2) Gravenmeir subscribed to machinegun magazines and possessed a book which described how to convert semi-automatic weapons to fully automatic; and (3) Gravenmeir's filing cabinet contained the very parts that would need to be removed to convert an Uzi to fully automatic.[4]

## C. The "Two" Knowledge Instructions

■ With respect to § 922(*o*), the judge instructed the jury that the government must prove that the "defendant knowingly possessed a machine gun" and that "the defendant knew that the firearm was a machine gun." Shortly thereafter, the judge gave the model instruction of "knowingly": "An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident. The Government is not

---

**4.** On appeal, Gravenmeir argues for the first time that this instruction "invited the jury to draw improper inferences," and that the instruction "impermissibly limited" the jury's consideration of the evidence. These arguments are without merit.

The facts indicate that there was a visible external selection switch which had an extra firing position engraved, not stamped, onto the gun, and there was expert testimony that one could tell the gun was automatic based on visible modifications to the gun, even when the gun was not in automatic mode. From these facts, the jury

could have made "the connection permitted by the inference" in this instruction. *County, Court of Ulster County New York v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777 (1979).

The instruction did not "impermissibly limit" the jury's consideration of the evidence either—it merely informed them of one possible inference they could make. Even if the instruction did limit their consideration of the evidence, it did so in Gravenmeir's favor, by de-emphasizing the other evidence of Gravenmeir's knowledge. Thus, the instruction was not prejudicial to Gravenmeir.

required to prove that the defendant knew that his acts or omissions were unlawful."

Gravenmeir did not object to this instruction at trial, but now contends that the general "knowingly" instruction conflicts with the "knew that the firearm was a machine gun" instruction by describing "a different state of knowledge." He claims the jury, applying the general instruction, could have convicted him without finding that he knew of the automatic capability of the Uzi. As there was no objection at the time of trial, we review these instructions for plain error. *United States v. Bracy,* 67 F.3d 1421, 1431 (9th Cir.1995).

Gravenmeir fails to explain how these instructions conflict—how a jury could avoid finding that he "knew that the firearm was a machine gun" because of a general instruction that requires a defendant's awareness of his acts. Gravenmeir's reliance on our decision in *United States v. Stein,* 37 F.3d 1407 (9th Cir.1994) (disapproved on other grounds, *Roy v. Gomez,* 81 F.3d 863 (1996)), is misplaced. In *Stein,* the defendant was charged with money laundering, which required the government to prove that the defendant knew the money came from an unlawful activity—in other words, the defendant did not need to know that the act of laundering the proceeds was illegal, but he did need to know that the activity that produced the money was unlawful. *Id.* at 1410. The district court in *Stein* properly instructed on this aspect of the crime, but later gave the general knowingly definition quoted above, which contains the statement: "The Government is not required to prove that the defendant knew that his acts or omissions were unlawful." *Id.* This general instruction purported to apply to all of the defendant's actions—both the money laundering and the underlying crimes. We reversed because the general instruction directly conflicted with the previous specific instruction regarding the government's need to prove the defendant's knowledge of the illegality of the underlying activity. *Id.*

There is no such conflict here. Section 922(*o*) does not involve different states of knowledge. The statute itself only states that it is unlawful to "possess a machinegun." 18 U.S.C. § 922(*o*). While § 922(*o*) does not specify a mens rea element, the Supreme Court recently construed a parallel machinegun law, also lacking a specific mens rea element, to require knowledge. *Staples v. United States,* 511 U.S. 600, 619, 114 S.Ct. 1793, 1804, 128 L.Ed.2d 608 (1994) (construing 26 U.S.C. § 5861(d), which criminalizes possession of an unregistered machinegun). In *Staples,* the government conceded that it needed to prove knowing possession. *Id.* at 621, 114 S.Ct. at 1805 (Ginsburg, concurring). Thus, the issue was whether the government also needed to prove that the defendant "knew of the features of his AR–15 that brought it within the scope of the Act." *Id.* at 619, 114 S.Ct. at 1804. The Court found that it did—i.e., that the government must prove the defendant's awareness that he possessed the gun and the defendant's awareness of the weapon's automatic nature. *See id.* at 621–22, 114 S.Ct. at 1805 (Ginsburg, concurring). Assuming, as the district court in this case did, that the latter requirement extends to § 922(*o*),[5] the same mens rea would apply to both elements of this section and the district court's knowledge instructions were completely appropriate.[6]

**AFFIRMED.**

---

5. *See United States v. Rogers,* 94 F.3d 1519, 1523 n. 5 (11th Cir.1996) (holding, based on the similarity of the statutes, that *Staples* applies to § 922(*o*)), *cert. granted on another issue,* — U.S. ——, 117 S.Ct. 1841, 137 L.Ed.2d 1046 (1997).

6. Gravenmeir's final argument, that § 922(g) & (*o*) are unconstitutional because they exceed Congress's power under the Commerce Clause, is foreclosed by previous decisions of this court. *See United States v. Polanco,* 93 F.3d 555, 563 (9th Cir.) (§ 922(g)), *cert. denied,* — U.S. ——, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996); *United States v. Rambo,* 74 F.3d 948, 951–52 (9th Cir.) (§ 922(*o*)), *cert. denied,* — U.S. ——, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996).