UNITED STATES of America, Plaintiff—Appellee,

v.

Steven Arthur HILLMANN, Defendant—Appellant.

No. 03–50274.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 30, 2004.

Decided April 30, 2004.

Christopher M. Alexander, San Diego, CA, for Plaintiff–Appellee.

Michelle Villasenor–Grant, Esq., FDCA–Federal Defender's of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: D.W. NELSON, FERNANDEZ, and KLEINFELD, Circuit Judges.

## MEMORANDUM *

Steven Arthur Hillmann appeals his conviction for importing and possessing with intent to distribute 3,553 milliliters of ketamine, a controlled substance. *See* 21 U.S.C. §§ 952, 960, 841(1)(a). We affirm Hillman's conviction for importation of ketamine, but we reverse his conviction for possession with intent to distribute.

1. *The District Court Properly Admitted Statements Made by Hillmann to Customs Agents Before He Was Advised of His* Miranda *Rights.*

We have long recognized that Fourth Amendment rules are different at

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the border, where travelers may routinely be searched and detained without probable cause or *Miranda* warnings. *See United States v. Butler*, 249 F.3d 1094, 1098–99 (9th Cir.2001). Detaining a person for routine border questioning is not custodial, even if a person is "not free to leave or to refuse to be searched." *Id.* at 1098. To determine whether detention at the border qualifies as "custody" for *Miranda* purposes, we must ask whether "a reasonable innocent person ... would conclude that *after brief questioning he or she would not be free to leave." United States v. Bravo*, 295 F.3d 1002, 1009 (9th Cir.2002) (internal quotations omitted) (emphasis in original). Here, all of the relevant factors point to the conclusion that a reasonable, innocent person in Hillmann's position would have believed that he would be free to leave after brief questioning. *See Butler*, 249 F.3d at 1099 (establishing a five-factor test to determine whether "the objective circumstances of the ihterrogation" indicate that an individual was in custody for *Miranda* purposes). Since Hillmann was not "in custody" during the inspection, his statements were properly admitted at trial.

2. *The Government Introduced Sufficient Evidence for the Jury To Find Hillmann Guilty of Importing Ketamine.*

■ There was abundant evidence to support Hillmann's conviction for importing ketamine, including his own properly admitted confession. Hillmann argues that, in addition to the statutory elements of the crime under 21 U.S.C. §§ 952 and 960, the government must prove that he imported the ketamine for an illicit use and without proper declaration. Hillmann bases this claim on two exceptions to an importation offense. *See* 21 U.S.C. §§ 952(a), (b). However, statutory exceptions to an offense are affirmative defenses, not elements of a crime. *See United*

*States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir.1997). The government does not have to prove the *absence* of an exception. *See id.* Hillmann did not argue in the district court that he had declared the ketamine or that he was authorized to import it, nor did he present *any* evidence even remotely suggesting that either of the statutory exceptions applied.

3. *The District Court Properly Instructed the Jury.*

■ Hillmann also argues that the district court erred when it denied his proposed jury instruction stating that the government must prove that he was not importing the ketamine for "a medical, scientific, or other legitimate use with the proper permit, notification, or declaration," and that the court erred by failing to instruct the jury on whether ketamine is classified as a narcotic or nonnarcotic drug. However, as discussed above, Hillmann did not present any evidence suggesting a "legitimate use." A court is not required to provide a proposed instruction covering an alleged "theory of the defense" that lacks any foundation in the evidence. *See United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir.1990); *United States v. McLister*, 608 F.2d 785, 791 (9th Cir.1979). Similarly, the district court also did not err in refusing to instruct the jury as to whether ketamine is classified as a narcotic or nonnarcotic substance. Such a distinction was unnecessary since Hillmann failed to introduce evidence to support a defense under either classification.

For the foregoing reasons, we affirm his conviction for importing ketamine.

4. *The Government Introduced Insufficient Evidence for the Jury To Find Hillmann Guilty of Possessing Ketamine with the Intent To Distribute.*

■ Proof of the possession of 3,553 milliliters of ketamine, standing alone,

does not suffice to prove intent to distribute beyond a reasonable doubt. While it is true that a jury can infer intent to distribute from possession of a large quantity of drugs, *United States v. Johnson,* 357 F.3d 980, 984 (9th Cir.2004), when the prosecution seeks to prove intent to distribute based solely on the quantity seized, it typically must introduce evidence regarding what constitutes a "personal use" amount of the substance. *See, e.g., id.; United States v. Stewart,* 770 F.2d 825, 832 (9th Cir.1985); *United States v. Kelly,* 527 F.2d 961, 965 (9th Cir.1976); *see also United States v. Stephens,* 23 F.3d 553, 557–58 (D.C.Cir.1994) (tolling cases). Such evidence is necessary for a jury to determine whether the amount seized proved beyond a reasonable doubt that the defendant intended to distribute, rather than personally consume, a controlled substance. *See Turner v. United States,* 396 U.S. 398, 423, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Magalon–Jimenez,* 219 F.3d 1109, 1113 (9th Cir.2000).

In the instant case, there was no reference point for the jurors to determine how much ketamine could reasonably be consumed for personal use as opposed to commercial distribution. The government presented no evidence as to what constituted a typical "dose" of ketamine for either legitimate or illicit purposes, how ketamine was typically packaged for illicit distribution, or the amount of ketamine a typical human user would consume. Without such information, it is impossible for a reasonable juror to evaluate whether the amount of ketamine found in Hillmann's luggage is a large enough quantity to infer intent to distribute. Three water-bottle-sized containers, concealed inside luggage, do not objectively–or intuitively–constitute a "large" quantity of a liquid substance. *Cf. United States v. Allen,* 675 F.2d 1373, 1384 (9th Cir.1981) ("[P]ersonal consumption of 17,000 pounds of anything, much less marijuana, is a staggering proposition sufficient to compel disbelief, leaving commercial distribution as the only realistic goal of the enterprise.").

Nor does the fact that the government's expert testified that a 10–milliliter vial is the most common "container" used to hold ketamine for "legitimate purposes" assist the jury in making this determination. The government prosecuted Hillmann for importing the ketamine for *il* legitimate distribution, not legitimate use. The packaging of ketamine for legitimate purposes, *e.g.,* to anesthetize animals, is not helpful in determining how much a human drug user could personally consume.

Since the government failed to introduce sufficient evidence of Hillman's intent to distribute, we reverse Hillmann's conviction of possession of a controlled substance with intent to distribute and remand for resentencing consistent with this opinion.

AFFIRMED in part and REVERSED and REMANDED in part.