**UNITED STATES of America, Appellee,**

**v.**

**Patricia SKINNER, Raymond Blodgett, William Sherman, and Debra Rexford, Defendants,**

**Patricia Skinner and Raymond Blodgett, Defendants–Appellants.**

**Nos. 47, 48, Dockets 91–1112, 91–1113.**

United States Court of Appeals, Second Circuit.

Argued Aug. 28, 1991.

Decided Sept. 30, 1991.

Charles D. Hickey, St. Johnsbury, Vt., for defendant-appellant Skinner.

Bonnie Barnes, Middlebury, Vt. (William K. Sessions, III, Sessions, Keiner, Dumont, Barnes & Everitt, of counsel), for defendant-appellant Blodgett.

Melissa A.D. Ranaldo, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., David V. Kirby, Chief, Criminal Div., of counsel), for appellee.

Before OAKES, Chief Judge, and FEINBERG and CARDAMONE, Circuit Judges.

OAKES, Chief Judge:

Patricia Skinner and Raymond Blodgett appeal judgments of conviction and sentencing entered by the United States District Court for the District of Vermont, Albert W. Coffrin, *Senior Judge.* Skinner was convicted, following a jury trial, of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988); six counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1) (1988); six counts of use of the mail to commit a felony in violation of 21 U.S.C. § 843(b) (1988); eight counts of use of a telephone to commit a felony in viola-tion of 21 U.S.C. § 843(b) (1988); three counts of use of the mail to distribute proceeds of an unlawful activity in violation of 18 U.S.C. § 1952(a) (1988); and four counts of conducting a financial transaction with the proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1988). Skinner was sentenced to fifty-one months' imprisonment and three years' supervised release. Blodgett was convicted, in the same trial, of the same offenses except that he was found not guilty of the counts of use of a telephone to commit a felony. Blodgett was sentenced to sixty-three months' imprisonment and three years' supervised release. We affirm the convictions but remand for reconsideration of a downward departure from the sentences imposed.

Appellants' convictions resulted from a series of uncomplicated cocaine sales occurring from July to October, 1989 in Vermont and Alaska. The Government presented evidence at trial showing that the sales proceeded as follows. On several occasions in July and August, Blodgett sent cocaine from Alaska to Skinner in Vermont, by Express Mail. Skinner would then sell the cocaine to purchasers in Vermont, who included a Vermont State Police undercover agent, Sgt. Paul Duquette. To pay Blodgett for the cocaine, Skinner used the proceeds of her sales to purchase U.S. Postal Service money orders totalling $3,320, which she then sent to Blodgett in Alaska. In late August, Blodgett returned to Vermont and thereafter sold cocaine directly to Skinner. Altogether, Blodgett transferred approximately 120 grams of cocaine to Skinner.

First, appellants argue that they were improperly convicted of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1988), because the statute was designed to criminalize financial transactions aimed at concealing the source of proceeds generated from illegal activity. Congress did not intend, they argue, to convert simple payment for illegal drugs into an independent offense. Although appellants' conduct seems to differ from that which we traditionally associate with the term "money

laundering", the language Congress used in 18 U.S.C. § 1956(a)(1)(A)(i) shows that it sought to reach conduct that went beyond the concealment of proceeds of criminal activity.[1] Indeed, the words of this provision of the statute, in conjunction with the definitions provided in 18 U.S.C. § 1956(c) (1988), demonstrate that Congress intended to make unlawful a broad array of transactions designed to facilitate numerous federal crimes, including the sale of cocaine.

■ Where, as here, the statutory language is unambiguous, absent legislative history that contradicts that language, we will not adopt a different construction of the statute. *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984). Appellants have pointed to no legislative history that contradicts the plain meaning of § 1956(a)(1)(A)(i). Nor has our own review of the legislative history given us reason to deviate from the district court's view of the breadth of the statute. Thus, applying the language of this provision to appellants' activities, we agree with the district court that they were properly convicted under the Money Laundering Act.

■ Skinner also argues that the district court erred in refusing to dismiss the superceding indictment returned nineteen days before trial. The district court did have the discretion to grant a continuance, *see United States v. Guzman*, 754 F.2d 482, 486 (2d Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 766 (1986), and offered to sever the Money Laundering Act counts. Appellant, however, cites no legal authority for the proposition that the district court should have dismissed the superceding indictment. Accordingly, the district court committed no abuse of discretion in denying his motion to dismiss.

■ Next, Skinner argues that the district court should have dismissed the counts of use of the mail to commit a felony (21 U.S.C. § 843(b)), because the underlying elements of these counts were incorporated within the Travel Act counts (18 U.S.C. § 1952(a)). The proper procedure, as followed by the district court, however, is to combine multiplicious counts at sentencing. Thus, the district court's denial of Skinner's request to dismiss was not error. *See United States v. Aiello*, 771 F.2d 621, 634 (2d Cir.1985).

■ Blodgett argues that the district court should have vacated the Money Laundering Act counts (18 U.S.C. § 1956(a)(1)(A)(i)) and the Travel Act counts (18 U.S.C. § 1952(a)) under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We find that the district court correctly determined that, although the statutes were multiplicious, Congress in 18 U.S.C. § 1956(d) intended cumulative punishment under the Money Laundering Act and the Travel Act. Given this congressional intention, these cumulative convictions do not entitle appellant to a new trial. *See Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983).

■ Blodgett also contends that the district court improperly admitted statements made by Skinner to Sgt. Duquette, because those statements were not made in furtherance of the conspiracy, and as such did not meet the requirements of Rule 801(d)(2)(E) of the Federal Rules of Evidence and violated Blodgett's rights under the Confrontation Clause. We need not analyze each statement in detail, because even assuming that the district court's admission of these statements was clearly erroneous, our review of · the overwhelming and unchallenged evidence linking Blodgett to Skinner demonstrates that any error was harmless beyond a reasonable doubt. *See United States v. Pilarinos*, 864 F.2d 253, 257 (2d Cir.1988); *United States v. Towne*, 870 F.2d 880, 887 (2d Cir.1989).

---

**1.** The provision provides, in pertinent part:
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
 (A)(i) with the intent to promote the carrying on of specified unlawful activity ... [shall be sentenced to a fine or imprisonment].

Finally, appellants argue that under the United States Sentencing Guidelines, United States Sentencing Commission, *Guidelines Manual* § 2S1.1 (1990) (U.S.S.G.), they were entitled to a downward departure from an adjusted offense level of 24 for money laundering to a level of 16, because their conduct did not typify the conduct anticipated by the Sentencing Commission. The district judge, in refusing to grant the departure, apparently believed that the small amount of proceeds involved in the transaction did not warrant his granting a downward departure and did not consider it to be a "mitigating circumstance" which was necessary for such a departure.

■ We believe, however, that under these facts the Sentencing Guidelines give the district court the authority to grant a downward departure. Congress provided in 18 U.S.C. § 3553(b) (1988) that the court may depart from the guidelines if it finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different than that described [in the guidelines]." This allowance for flexibility is reflected in the Introduction to the Sentencing Guidelines, which explains that the sentencing court should regard

> each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a downward departure is warranted.

U.S.S.G. Ch. 1, Part A, 4(b). Moreover, Chapter 5, Part K of the Guidelines, which deals specifically with departures and identifies several factors that the Sentencing Commission was unable adequately to consider in establishing the guidelines, explains that the court may look at *other* factors that have not been given adequate consideration by the Commission, and such factors may warrant departure from the Guidelines. U.S.S.G. § 5K2.0. We followed this approach recently in *United States v. Lara*, 905 F.2d 599, 605 (2d Cir.

1990), where we held that a defendant's extreme physical vulnerability, while in prison, is a factor "not adequately considered by the Commission and a proper ground for departure." *See also United States v. Sharpsteen*, 913 F.2d 59, 63–64 (2d Cir.1990) (Guidelines authorized the court to depart downward under Chapter 5, Part H in light of the defendant's family ties and responsibilities).

In this case, although the appellants' conduct falls within the words of the Money Laundering Act, the terms of the relevant commentary shows that this conduct lies well beyond the "heartland" or the "norm." *See* U.S.S.G. Ch. 1, Part A 4(b). As such, we believe the commentary indicates that the Sentencing Commission failed adequately to consider that the conduct at issue here could result in convictions under the Money Laundering Act. *See id.* at § 5K2.0. Thus, the district court had the authority to consider granting a downward departure. *Id.* The commentary to § 2S1.1 reflects the type of conduct considered by the Sentencing Commission in formulating the relevant guidelines: "A higher base offense level is specified if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A) or (a)(2)(A) because those subsections apply to defendants who did not merely conceal a serious crime that had already taken place, but encouraged or facilitated the commission of further crimes." *Id.* at § 2S1.1 comment. (backg'd).

Here, the appellants did not enter into the financial transactions to conceal a serious crime, and the Government never sought to prove that they did. Further, although the district court found that "these financial transactions were entered into with the intent to promote the narcotics trafficking conspiracy alleged in the indictment," such "promotion" was de minimis, because the transactions in reality represented only the completion of the sale from Blodgett to Skinner.

In alleging that the transactions promoted further crimes, the Government only argued that by paying Blodgett from the proceeds she received, "Skinner was able to continue her cocaine business because Blodgett would continue to 'front' her the cocaine by sending it to her through the

mail." It is doubtful, however, whether Skinner needed to make payments by money order to continue her business, because Blodgett returned from Alaska in late August and began selling cocaine directly to Skinner. Again, viewing the transactions in this light, they can only be said to have facilitated additional crimes in the most minimal sense. Accordingly, the appellants' conduct was both atypical of the conduct described by the Sentencing Guidelines and inadequately considered by the Sentencing Commission, thus empowering the district court to consider a downward departure.

Accordingly, the judgments of conviction of the district court are affirmed, except we remand for reconsideration of a downward departure from the sentences imposed.