74 F.3d 1247
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mordo DANYALI, aka Mordi Danyali, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jacqueline DANYALI, Defendant-Appellant.
 Nos. 94-50503, 94-50510.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Jan. 17, 1996.
 
 1
 Before: POOLE and O'SCANNLAIN, Circuit Judges, and Marquez,[1] District Judge.
 
 MEMORANDUM[2]
 
 2
 Appellants Mordo Danyali ("Mordo") and Jacqueline Danyali ("Jacqueline") appeal their sentences, following convictions for mail fraud and money laundering.
 
 
 3
 The district court sentenced both Jacqueline and Mordo to 72 months incarceration on each of the mail fraud and money laundering counts, the sentences to be served concurrently, to be followed by three years of supervised release, a special assessment of $1,250.00, and restitution of $12,043.15.
 
 
 4
 Jacqueline was employed, from December 10, 1990 through September 4, 1991 by a company called Medaphis. Medaphis is a billing service for hospital-based physicians. Soon after Jacqueline began her employment at Medaphis, she began stealing patient and insurance company information, and sending fake bills to insurance companies. Jacqueline submitted approximately 7,000 false claims. When the insurance companies paid the claims, Jacqueline collected the checks and deposited them, or had them deposited into one of the bank accounts controlled by Mordo.
 
 
 5
 Eventually, Jacqueline quit her job at Medaphis, and she and Mordo set up an office from which the fraudulent business was run. Jacqueline performed the day-to-day business of preparing and sending the fraudulent claim forms and Mordo opened several post office boxes and two bank accounts, obtained tax identification numbers and fictitious business names, and controlled the finances of the business.
 
 
 6
 When the information which was stolen from Medaphis grew stale, and more and more of the fraudulent claims were denied, Mordo attempted to solve the problem and determined that a computer "hacker" should be hired to steal more information. Before he could succeed, however, both Jacqueline and Mordo were arrested.
 
 
 7
 Pursuant to United States Sentencing Guidelines ("USSG") Sec. 2S1.1(a)(1), Jacqueline and Mordo's base offense level for the money laundering charges was 23. This level was increased by one, pursuant to USSG Sec. 2S1.1(b)(2)(B), because the value of the funds laundered was approximately $175,000.00, for a total level of 24. Jacqueline and Mordo's offense level for the fraud counts was calculated, pursuant to USSG Sec. 2F1.1(a), which sets a base offense level of 6, with an increase of 12 levels under USSG Sec. 2F1.1(b)(1)(M), because the loss exceeded $1.5 million, and an increase of two levels under USSG Sec. 2F1.1(b)(2), since the offense involved more than minimal planning and more than one victim, for a total mail fraud offense level of 20. Combining the mail fraud and money laundering offense levels, pursuant to USSG Sec. 3D1.4, yielded a total combined offense level of 26.
 
 
 8
 The district court declined to decrease Mordo's offense level by two points for minor participation, pursuant to USSG Sec. 3B1.2. The district court declined to decrease Jacqueline's offense level by two points for acceptance of responsibility, pursuant to USSG Sec. 3E1.1.
 
 
 9
 With an offense level of 26, and a criminal history score of I, both Jacqueline and Mordo's sentencing guideline range was 63 to 78 months. The court sentenced the defendants to 72 months of incarceration, three years of supervised release, a special assessment of $1,250.00, and restitution of $12,043.15.
 
 
 10
 This Court has jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742. We affirm in part and reverse and remand in part.
 
 A) Jacqueline Danyali
 I.
 
 11
 Jacqueline maintains that the district court erred when it determined that it lacked discretion to depart downward, finding that the money laundering was incidental to the mail fraud. Initially, this Court must determine whether the district court was exercising its discretion when it did not grant a downward departure or refused to depart because it could not legally do so.[3] Discretionary refusal to depart is non-reviewable. United States v. Diamond, 53 F.3d 249, 253 (9th Cir.1995) (citing United States v. Morales, 898 F.2d 99 (9th Cir.1992)).
 
 
 12
 The Appellant argues that the money laundering was merely "incidental" to the mail fraud, and the court should ignore the money laundering convictions when imposing sentence. The district court disagreed, stating: "This isn't a case in which the ill-gotten gains were simply put into a bank account and you chose--and the government has chosen to charge money laundering simply to up the punishment. This is a case in which part of the proceeds were used to continue the scheme. That, to me, makes a difference."
 
 
 13
 The district court clarified its position regarding its ability to depart downward explaining that it did not have the power to disregard a conviction supported by legal evidence.
 
 
 14
 The district court found that the money laundering was not incidental to the fraud, therefore, there was no legal basis for a downward departure.
 
 
 15
 This court reviews a district court's refusal to depart downward based on its belief that it lacked legal grounds to do so de novo. U.S. v. Rose, 20 F.3d 367, 375 (9th Cir.1994).
 
 
 16
 Under 18 U.S.C. Sec. 3553(b), the court may depart from the guidelines if it finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines than that described in the guidelines."
 
 
 17
 Jacqueline cites United States v. Skinner, 946 F.2d 176 (2nd Cir.1991), for the proposition that the trial court has authority to depart downward in a typical money laundering case. In Skinner, the conduct underlying the defendant's money laundering conviction involved a payment for a drug transaction that had already occurred. Since the payment was for past, and not future drug dealing, the court reasoned that the transaction furthered the criminal activity in only the most minimal sense. Id. at 179-80. The court contrasted this conduct to that warranting the higher money laundering guideline sentence--financial transactions that encourage or facilitate the commission of further crimes. Id. at 179.
 
 
 18
 In the case at bar, the Appellant admits that the money obtained through fraud was used to facilitate the scheme. It is also important to note that Skinner is a Second Circuit case and there is no evidence that the Ninth Circuit has accepted the rationale in Skinner, especially in light of Rose.
 
 
 19
 In Rose, the Appellant put forth the same argument that the Appellant puts forth herein. The Appellant argued that "the disparity in the severity of fraud and money laundering guidelines was an oversight by the Sentencing Commission giving rise to a mitigating circumstance ..." Id. at 375. This court upheld the district court's refusal to depart downward, holding that the defendant had failed to state a legal basis for departure:
 
 
 20
 [T]he sentencing disparity complained of was not merely foreseen but also intended under U.S.S.G. Sec. 2s1.1 and was resolved in favor of the harsher sentence under U.S.S.G. Sec. 3D1.3. Moreover, the commentary to the money laundering guideline, U.S.S.G. Sec. 2S1.1, notes that the Sentencing Commission drafted this guideline to establish a "higher base offense level ... if the defendant is convicted under 18 U.S.C. Sec. 1956(a)(1)(A), "and thus to provide for "substantial punishment" for "defendants who encouraged or facilitated the commission of further crimes."
 
 
 21
 Id. at 375; see also United States v. Morris, 18 F.3d 562, 569 (8th Cir.1994) (rejecting contention that money laundering should be sentenced same as underlying fraud).
 
 
 22
 The record shows that Jacqueline and Mordo used the proceeds of their fraud to perpetuate the scheme, obtain more money, and harm more victims. Although Jacqueline concedes that she engaged in money laundering, she points out that of the $1.5 million that she received, only $60,000 was used to further the scheme. She therefore argues, the money laundering was merely "incidental" to the mail fraud. The district court disagreed and found to the contrary.
 
 
 23
 The district court correctly found that the amount Jacqueline and Mordo laundered was not a mitigating factor warranting a downward departure. The district court also correctly found that the amount laundered did not provide a legal basis for a departure. Additionally, it is clear that the Sentencing Guidelines do take into account the sentencing disparity between fraud and money laundering; opting in favor of the harsher sentence. Rose, 20 F.3d 374-75.
 
 II.
 
 24
 Jacqueline argues that the district court clearly erred by refusing to grant her a two-level downward adjustment in her offense level for acceptance of responsibility.
 
 
 25
 This Court reviews a district court's factual finding as to whether a defendant has accepted responsibility for criminal conduct for clear error. United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1991). Great deference is given to the sentencing judge's determination regarding a defendant's acceptance of responsibility. United States v. Acuna, 9 F.3d 1442, 1446 (9th Cir.1993).
 
 
 26
 The application notes to USSG Sec. 3E1.1(a) list various factors used in determining whether a defendant qualifies for an offense decrease for acceptance of responsibility. The factors applicable to this case include, but are not limited to:
 
 
 27
 (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sec. 1B1.3 (Relevant Conduct).
 
 
 28
 ....
 
 
 29
 (c) voluntary payment of restitution prior to adjudication of guilt;
 
 
 30
 ....
 
 
 31
 (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
 
 
 32
 ....
 
 
 33
 USSG Sec. 3E1.1, Application Notes at (a), (c), (e).
 
 
 34
 The district court found that Jacqueline's false testimony and her attempts to manipulate the acquittal of Mordo, the co-defendant, constituted a basis for denying an adjustment for acceptance of responsibility.[4] This Court has held that this is a proper basis for the denial of a departure on acceptance of responsibility. United States v. Acuna, 9 F.3d 1442 (9th Cir.1993). See also United States v. Lato, 934 F.2d 1080, 1083 (9th Cir.) (fact that defendant suborned perjury one reason why the denial of acceptance of responsibility was proper), cert. denied, 502 U.S. 897 (1991).
 
 
 35
 The district also found that although it was agreed that 90 percent of the funds could be traced, the Appellant had made no effort to make the victims of her scheme whole by turning over the proceeds of her illegal activities. Furthermore, contrary to Appellant's assertion, any and all forfeiture proceedings were being contested and the Appellant had failed to assist the government in retrieving any of the proceeds from the scheme. Judge Ideman also focused on the ten percent of the proceeds which had not been accounted for which included approximately $18,000.00 in gold coins and approximately $150,000.00 in money sent oversees. Additionally, the district court seemed skeptical regarding the amount of money which the Appellant claimed was gambled away.
 
 
 36
 Based on the district court's findings that Jacqueline testified falsely, had not assisted authorities, and that she had otherwise demonstrated behavior inconsistent with accepting responsibility for her crimes, the district court did not clearly err in denying Jacqueline a downward departure for acceptance of responsibility.
 
 III.
 
 37
 Jacqueline argues that the district court erred when it determined not to depart downward based on her gambling problem.
 
 
 38
 The first question this Court must consider is whether the district court's refusal to depart is reviewable. See United States v. Belden, 957 F.2d 671, 676 (9th Cir.1992), cert denied, --- U.S. ----, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992). A district court's discretionary refusal to depart downward is not subject to review on appeal. Rose, 20 F.3d at 375.
 
 
 39
 The Appellant argues that a departure was appropriate pursuant to USSG Sec. 5K2.13, due to the Appellant's gambling addiction. Section 5k2.13 provides:
 
 
 40
 The defendant must have 1) committed a non-violent offense 2) while suffering from significantly reduced mental capacity 3) not caused by voluntary use of drugs or other intoxicants. 4) The reduced capacity must contribute to the commission of the offense, and 5) the defendant's criminal history must not indicate a need for incarceration to protect the public.
 
 
 41
 U.S. v. Cantu, 12 F.3d at 1506 (9th Cir.1993).
 
 
 42
 The District Court considered a psychiatric evaluation, a letter from a licensed social worker, the probation officer's assessment, letters from the Appellant and the Appellant's family.
 
 
 43
 The district court recognized the Appellant's gambling problem, but made a discretionary decision not to depart downward. The Ninth Circuit has refused to review refusals to depart explained in terms far more ambiguous than the terms used here. See United States v. Robinson, 958 F.2d 268, 272 (9th Cir.1992) (no review where no indication in record that refusal to depart was not discretionary--district court had entertained briefs and argument and concluded that departure was "not warranted"); See also Rose, 20 F.3d at 374-75, n. 6.
 
 
 44
 Jacqueline's argument that the district court did not exercise discretion and did not consider her gambling problem is without merit.
 
 B) Mordo Danyali
 I.
 
 45
 Mordo argues that the evidence presented at trial was insufficient to sustain the convictions for mail fraud and for money laundering.
 
 
 46
 In determining the sufficiency of evidence of a criminal conviction, the evidence must be viewed in a light most favorable to the government to determine whether "any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Kuball, 976 F.2d 529, 531 (9th Cir.1992; (quoting United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988)). " '[T]he government's evidence need not exclude every reasonable hypothesis consistent with innocence.' " United States v. Bishop, 959 F.2d 820, 830 (9th Cir.1992) (quoting United States v. Miller, 688 F.2d 652, 663 (9th Cir.1982)).
 
 
 47
 "To convict of mail or wire fraud, the prosecution must prove that the defendant (1) used or caused the use of the mail or telephone in interstate commerce; (2) in furtherance of a scheme to defraud; (3) with the intent to defraud." United States v. Bonanno, 852 F.2d 434, 440 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989) (citing 18 U.S.C. Secs. 1341, 1343). The only element contested on appeal concerns the intent to defraud. The Appellant maintains that he had no knowledge that the medical insurance billing business in question was fraudulent, therefore, he had no intent to defraud.
 
 
 48
 Mordo correctly argues that in order to sustain a conviction for mail fraud it is "necessary to show willful participation in a scheme with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved." United States v. Price, 623 F.2d 587, 591 (9th Cir.1980). However, it is also true that "[f]raudulent intent may be, and often must be, proven by circumstantial evidence." United States v. Rasheed, 663 F.2d 843, 848 (9th Cir.1981) (citing United States v. Piepgrass, 425 F.2d 194, 199 (9th Cir.1970). In the case at bar, the record indicates that the district court had before it evidence establishing that Mordo did perform activities which were vital to the fraudulent scheme.
 
 
 49
 Mordo obtained post office boxes for the tax identification numbers and bank accounts to hide the location of the business. He obtained fictitious business licenses with various different names. He opened two business bank accounts using two different business names. Mordo also oversaw the accounts which held the funds generated by the fraud.
 
 
 50
 The trial court found that when the business had problems, Mordo worked at solving those problems. For example, when the information that Mordo had regarding claims became old, he hired a hacker to gain access to hospital computers. The information was to be used in submitting new false claims.
 
 
 51
 Although Mordo claimed to employees that he was running a small billing company, he was overseeing bank accounts through which $1.5 million was flowing. Employees of the business recognized that the everyday activities at the company were not consistent with a real billing company.
 
 
 52
 The trial court also found that Mordo took steps to hide his assets by listing them in different names.
 
 
 53
 After viewing the record in a light most favorable to the prosecution, the jury's conviction is supported by the evidence.
 
 
 54
 Mordo also challenges the money laundering convictions arguing that he lacked the knowledge of the underlying fraud; however, as previously discussed, the record reflects that he had knowledge of the fraud, therefore, the money laundering convictions must be affirmed.
 
 II.
 
 55
 Mordo contends that the convictions for money laundering must be reversed due to conflicting jury instructions.
 
 
 56
 This Court reviews questions regarding conflicting jury instructions de novo. United States v. Stein, 37 F.3d 1407, 1409 (9th Cir.), cert denied, 115 S.Ct. 1170 (1994).
 
 
 57
 In the instant case, the district court gave the following instruction on the term "knowingly":
 
 
 58
 The term "knowingly," as used in these instructions to describe the alleged state of mind of a defendant, means that he was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident.
 
 
 59
 The court subsequently gave the following instruction on money laundering:
 
 
 60
 In order to sustain its burden of proof for the crime of money laundering, as charged in the indictment, the government must prove the following three essential elements beyond a reasonable doubt:
 
 
 61
 One: A defendant conducted a financial transaction which, in fact, involved the proceeds of mail fraud;
 
 
 62
 Two: The defendant knew the property involved was the proceed of some form of some unlawful activity; and
 
 
 63
 Three: The defendant intended to promote the carrying on of the mail fraud.
 
 
 64
 Mordo incorrectly argues that the court gave the same instructions regarding "knowingly" and money laundering as were given in Stein. In Stein, the court gave a different instruction on "knowingly." That instruction included the following sentence: "The government is not required to prove that the defendant knew that his acts or omissions were unlawful." Stein, 37 F.3d at 1410. In Stein, the court explained that this definition of knowingly conflicted with the specific instruction on money laundering in that "a jury could convict Stein without finding that he knew his predicate acts of fraud were unlawful." Id. However, as discussed above, Stein is inapplicable to the instant case because the general definition of knowingly did not contain the same language as the definition in Stein nor did it contain any language which conflicted with the specific instruction on money laundering. The instructions regarding "knowingly" and money laundering were consistent and proper.
 
 III.
 
 65
 Mordo argues that the district court erred when it failed to grant a downward departure on the basis that the Appellant was a minor participant.
 
 
 66
 The district court's finding that Mordo did not qualify for a minor or minimal participant status is dependent on the facts of the particular case, and the district court finding will be upheld unless it is clearly erroneous. United States v. Davis, 36 F.3d 1424, 1436 (9th Cir.1994). "The defendant has the burden of proving that he is entitled to a downward adjustment based on his role in the offense by a preponderance of the evidence." Id. See United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990).
 
 
 67
 The district court adopted the recommendation of the probation officer that Mordo not receive a downward adjustment with regard to his participation in the offense. The district court concluded no departure was warranted due to Mordo's culpability. The fact that Mordo may have been less culpable in the overall scheme than Jacqueline does not automatically mean that the district court should have made a departure. "It is manifest, therefore, that the guidelines did not intend for every defendant who was less culpable than his codefendant to be granted minor participant status." United States v. Andrus, 925 F.2d 335, 337 (9th Cir.1991).
 
 
 68
 The district court's finding that Mordo was not a minor participant is not clearly erroneous and is warranted by the facts of the case.
 
 C) Sentencing
 
 69
 Both Jacqueline and Mordo were convicted on 20 counts of mail fraud, pursuant to 18 U.S.C. Sec. 1341, which carries a maximum sentence of five years on each count, and on five counts of money laundering, pursuant to 18 U.S.C. Sec. 1956(a)(1)(A)(i), which carries a maximum sentence of 20 years on each count. The district court sentenced the Appellants to 72 months on each count, to be served concurrently. Although the sentence is legal as to money laundering counts, all parties agree that it exceeds the statutory maximum as to the mail fraud counts. Accordingly, this Court shall vacate the Appellants' respective sentences on the mail fraud counts and remand for the limited purpose of allowing the district court to resentence the Appellants on the mail fraud counts.
 
 
 70
 The Judgment of the district court is AFFIRMED with the exception that the Appellants' sentences on the mail fraud convictions are REVERSED and the case REMANDED for the limited purpose of resentencing the Appellants on those counts.
 
 
 
 [1]
 The Honorable Alfredo C. Marquez, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 [2]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [3]
 Mordo Danyali makes the same argument regarding the district court's refusal to depart downward based on the money laundering conviction. The discussion on this issue applies to Mordo Danyali also
 
 
 [4]
 Judge Ideman explained that although he was certain that the Appellant lied on the stand, he gave her the benefit of the doubt and did not increase her score for obstruction of justice